UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

HEIDI STRAIGHT CASTRO,

    Plaintiff,

v.                                      Case No: 5:17-cv-510-Oc-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff, Heidi Straight Castro, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.  Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for a period of disability and DIB on February 10, 2014, alleging disability beginning December 24, 2013. (Tr. 172-74). Plaintiff's application was denied initially, and upon reconsideration. (Tr. 113-15, 118-22). At Plaintiff's request, an administrative hearing was held before Administrative Law Judge Myriam C. Fernandez Rice (the "ALJ") on November 10, 2016. (Tr. 60-79). On November 23, 2016, the ALJ entered a decision finding that Plaintiff was not under a disability from the alleged onset date of December 24, 2013, through the date of the decision. (Tr. 10-27). Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on August 29, 2017. (Tr. 1-7). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on October 30, 2017.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 24, 2013, her alleged onset date. (Tr. 12). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, asthma and chronic obstructive pulmonary disease, fibromyalgia with peripheral neuropathy and left hand neuralgia, mental impairments variously diagnosed as anxiety and depression, and obesity. (Tr. 12). At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except that she can stand or walk up to four hours in an eight hour day and sit six hours in an eight hour day. The claimant can never climb ladders, ropes, or scaffolds, and can perform all other postural categories occasionally including stooping, crouching, kneeling, crawling, climbing ramps and stairs, and balancing. The claimant requires a handheld assistive device for uneven terrain and prolonged ambulation, and fingering with the left-hand is limited to frequent not constant. The claimant should avoid concentrated exposure environmental irritants such as fumes, odors, dusts, and gases, and should avoid concentrated exposure to moving machinery and unprotected heights. The claimant is suitable for positions with only occasional interaction with the public, so that superficial interaction is allowed and the tasks are primarily focused on things rather than people-focused.

(Tr. 14-15). At step four, the ALJ found that Plaintiff, through the date last insured, was unable to perform her past relevant work as a licensed practical nurse. (Tr. 21).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant number in the national economy that should could have performed through her date last insured. (Tr. 21). Relying on the testimony of a vocational expert, the ALJ identified the following jobs: cashier II and ticket taker. (Tr. 21-22). The ALJ concluded that Plaintiff has not been under a disability from December 24, 2013, through the date of the decision, November 23, 2016. (Tr. 22).

**II.     Analysis**

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to give great weight to the opinions of Plaintiff's treating physicians, and (2) whether the ALJ erred by rejecting Plaintiff's testimony. The Court begins with Plaintiff's first issue.

Plaintiff argues that the ALJ erred by failing to give sufficient weight to the opinions of three treating physicians: Robert Ulseth, M.D., Gaurav Malhotra, M.D., and Alistair Co, M.D. (Doc. 17 p. 15-19). Plaintiff contends that the inconsistencies between the opinions are relatively minor and that they all agree that Plaintiff is not able to sit, stand, or walk for a total of eight hours per work day. (Doc. 17 p. 16). Further, Plaintiff argues that the ALJ did not meaningfully explain his finding that the opinions were inconsistent with the record as a whole. (Doc. 17 p. 17). Finally, Plaintiff argues that the record reveals numerous objective findings that support the treating doctors' finding that Plaintiff is unable to complete a full workday. (Doc. 17 p. 18-19). In response, Defendant argues that the ALJ had good cause for discounting the opinions of Plaintiff's treating physicians. (Doc. 18 p. 5-12).

The Court begins with a review of the medical evidence from these physicians. The record shows that from February of 2013 through May of 2014, Plaintiff treated with a primary care physician, Dr. Gaurav Malhotra, at the Your Family Doctor Clinic. (Tr. 288-97). Notable diagnoses included abdominal pain, insomnia, lower back pain, lumbar radiculopathy, anxiety, headaches, and hypertension. (Tr. 289-91, 296, 298-301). Physical examinations typically showed that Plaintiff had a normal gait and no neurological deficits. (See Tr. 290, 292, 295-96, 298-301). During her most recent visit to Dr. Malhotra's clinic, Plaintiff reported that Vicodin was not relieving her pain. (Tr. 289).

In November of 2014, Plaintiff's primary care physician, Dr. Malhotra, provided an opinion on Plaintiff's work capabilities. (Tr. 323-24). The doctor wrote that Plaintiff could sit for less than one hour and stand or walk for less than one hour in an eight-hour workday. (Tr. 323). Dr. Malhotra noted that Plaintiff could lift up to 20 pounds both occasionally and frequently. (Id.). The doctor observed that Plaintiff would be able to use her hands for grasping, handling, fingering,

pushing, pulling, and fine manipulation. (Id.). Dr. Malhotra also wrote that Plaintiff would need to take unscheduled breaks during the workday and would need to intermittently elevate her legs. (Tr. 324). The doctor determined that Plaintiff could occasionally bending, but could never kneel, squat, crawl, or climb. (Id.).

In May of 2015, Plaintiff had an appointment with Dr. Alistair C. Co at Suncoast Primary Care. (Tr. 326, 490). She reported that she used to work as a nurse with Citrus County Hospice but was forced to quit due to lower back pain and chronic obstructive pulmonary disease ("COPD"). (Id.). She also appeared to have moderately severe depression. (Id.). A physical examination showed that Plaintiff was cooperative and comfortable. (Tr. 327, 491). She had no clubbing or edema in her extremities, and a neurological examination was non-focal. (Id.). Dr. Co diagnosed Plaintiff with chronic pain syndrome and refilled her prescription for hydrocodone. (Id.). He also prescribed Venlafaxine for depression. (Id.).

In August of 2015, Plaintiff had a lumbar spine MRI, which showed that she had disc degeneration and facet hypertrophy at L4-L5 and L5-S1, but no stenosis. (Tr. 330-31, 488-49). Later that month, Plaintiff returned to Dr. Co's office to review the MRI results. (Tr. 486). The doctor refilled Plaintiff's main medications and prescribed a cane and a back brace. (Tr. 486-87; see also Tr. 332-33).

The next month, Plaintiff told Dr. Co that she was having pain in the right lateral side of her elbow and in her right shoulder. (Tr. 483). She was having difficulty raising her arm above her head. (Id.). Dr. Co diagnosed her with lateral epicondylitis. (Id.). Plaintiff's insomnia, chronic pain syndrome, depression, and anxiety were noted to be stable. (Id.).

In November of 2015, Plaintiff told Dr. Co that she had recently fallen in the shower and hit her head. (Tr. 466). This was the second time that she had fallen, and she was requesting a

shower chair. (Id.). Plaintiff also noted that she continued to have fatigue and lower back pain, though her pain level was stable on medication. (Id.). She also had symptoms of COPD but continued to smoke cigarettes. (Id.). Dr. Co noted that Plaintiff's lungs were clear to auscultation, with no wheezing, rhonci, or rales. (Tr. 467). A neurological examination was non-focal. (Id.). Dr. Co prescribed medications and recommended a nicotine patch. (Id.).

In March of 2016, Plaintiff asked Dr. Co to submit a letter to the Department of Children and Families explaining that she could not perform work activity. (Tr. 425). Plaintiff stated that she needed the letter to continue receiving food stamps. (Id.). Her medical conditions were stable and a physical examination was within normal limits. (Id.). The doctor noted that Plaintiff "has not been back smoking." (Id.). He renewed Plaintiff's prescriptions. (Tr. 426).

On the day of this visit, Dr. Co drafted short letter regarding Plaintiff's medical condition. (Tr. 346). He noted that Plaintiff has lower back pain and anxiety, and cannot sit or be on her feet for longer than an hour. (Id.). He noted that this limitation would be in effect from March of 2016 through October of 2016. (Id.).

Dr. Co filled out a medical source statement regarding Plaintiff's functional limitations. (Tr. 347-48). The doctor wrote that Plaintiff could sit for less than two hours and stand or walk for less than three hours in an eight-hour workday. (Tr. 347). He limited Plaintiff to less than 10 pounds of lifting. (Id.). Dr. Co wrote that Plaintiff could use her hands for simple grasping, handling, fingering, pushing, and pulling, but he noted Plaintiff could not perform fine fingering due to a limited range of motion in her left hand. (Id.). The doctor noted that Plaintiff would need an unscheduled break once per hour, for 20 to 25 minutes at a time. (Tr. 348). He determined that Plaintiff could never bend, kneel, squat, crawl, or climb. (Id.).

In June of 2016, Plaintiff saw Dr. Co for an annual wellness checkup. (Tr. 395). She complained of severe pain in her back and inner thigh. (Id.). In addition, Claimant reported that she was having chest pain at night when lying down. (Id.). She was concerned about her short-term memory, but her depression and anxiety were stable. (Id.). Dr. Co's diagnoses included chest pain; COPD; chronic pain syndrome; fatigue; fibromyalgia; anxiety; and chronic insomnia. (Tr. 398-99).

In June of 2016, Dr. Robert Ulseth filled out a medical opinion. (Tr. 349-50). He observed that Plaintiff could sit for less than three hours and stand or walk for less than three hours in an eight-hour workday. (Tr. 349). He determined that Plaintiff could lift or carry less than 10 pounds. (Id.). Dr. Ulseth noted that Plaintiff could perform grasping, handling, and fingering, but could not push or pull. (Id.). The doctor also wrote that Plaintiff would need to take 4 or 5 unscheduled breaks per day, for up to 30 minutes at a time. (Tr. 350). Dr. Ulseth determined that Plaintiff could occasionally bend, but could never squat, kneel, crawl, or climb. (Id.).

In July of 2016, Plaintiff told Dr. Co that she was having in her back, shoulders, and knees. (Tr. 383). She rated the pain as a 10 out of 10 in severity. (Id.). She also had been having chest pain off and on and was waiting to have a stress test scheduled. (Id.). Her anxiety and depression were stable, and she had not experienced any panic attacks or suicidal thoughts. (Id.). A physical examination showed that Plaintiff was alert, oriented, comfortable, and cooperative. (Id.). She had normal shape and expansion in her chest, and her lungs were clear to auscultation. (Id.). A neurological examination was non-focal. (Id.). Dr. Co filled Claimant's medications and referred her to a cardiologist. (Tr. 384).

Later that month, Plaintiff had another appointment with Dr. Co. (Tr. 376). She reported having shortness of breath and coughing for the past four weeks. (Id.). In addition, Plaintiff stated

that's he was having pain in her lower back and inner thigh. (Id.). Her anxiety and depression were stable. (Id.). A physical examination showed that Plaintiff was comfortable and cooperative. (Tr. 377). She had decreased breath sounds in her chest, but no wheezes, rhonci, or rales. (Id.). Dr. Co's diagnoses included an exacerbation of COPD; anxiety; insomnia; chronic pain syndrome; and hypertension. (Id.). The doctor prescribed inhalers for Plaintiff's COPD and renewed her prescriptions for Ativan and Zolpidem. (Tr. 377-78). In addition, Dr. Co renewed Plaintiff's hydrocodone and increased Plaintiff's dosage of gabapentin. (Tr. 378).

In her decision, the ALJ carefully reviewed the medical opinions from Drs. Malhotra, Ulseth, and Co, and explained the weight accorded to these opinions as follows:

> I have afforded less weight to the statements of the claimant's treating physicians, Dr. Malhotra, Dr. Ulseth, and Dr. Co, as the statements are inconsistent with each other, and inconsistent with the record as a whole. The doctors differed on their opinions regarding hours of standing/walking and sitting, elevating legs, using hands for fine manipulation, and pushing/pulling. In addition, the check-box style forms completed by the physicians include only conclusions regarding the functional limitations without any rationale for those conclusions.

(Tr. 18). In addition, the ALJ explained that she accorded little weight to the March 2016 letter from Dr. Co on the basis that "it was penned with the purpose of assisting the claimant in obtaining food stamp benefits, rather than a functional assessment." (Tr. 19).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.

*Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In this case, the Court finds that the ALJ failed to provide good cause for rejecting the opinions of Plaintiff's treating physicians Drs. Malhotra, Ulseth, and Co. The ALJ explained that she rejected these opinions on the basis that they were "inconsistent with the record as a whole." The ALJ, however, did not further elaborate this finding and it is not obvious to this Court upon review how the opinions were inconsistent. "Conclusory statements by an ALJ to the effect that an opinion is internally inconsistent or not supported by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion." *Reed v. Comm'r of Soc. Sec.*, 2015 WL 7688471, at *3 (M.D. Fla. Nov. 27, 2015). While the ALJ reviewed the medical evidence at length and thoroughly summarized Plaintiff's physicians' opinion, she did not sufficiently articulate how the opinions were inconsistent with the evidence as a whole. Thus, the Court rejects this reason as good cause for discounting the opinions.

Further, the ALJ's finding that the treating physicians' opinions "are inconsistent with each other" does not constitute good cause for discounting the opinions. While the opinions are not

identical, the Court notes that the differences seem relatively minor and, as Plaintiff notes, had no impact on the issue of whether Plaintiff is disabled. For example, Dr. Malhotra opined that Plaintiff is capable of standing/walking less than one hour and sitting less than one hour in an eight-hour work day; Dr. Ulseth opined that Plaintiff can stand/walk less than three hours and sit less than three hours in an eight-hour work day; and Dr. Co opined that Plaintiff can stand/walk for less than three hours and sit less than two hours in an eight-hour work day. The minor differences between their opinions, to this Court, seem to matter less than the fact that they agree in that Plaintiff has serious limitations in her ability to stand/walk and sit in an eight-hour work day. Thus, their opinions appear to bolster one another, rather than act as grounds for discounting the opinions. Perhaps there is a good reason to believe that the differences in the opinions undermine their persuasiveness. The ALJ's opinion does not further elaborate.

The ALJ also rejected Plaintiff's treating physician's opinion on the basis that the opinions were contained in "check-box style forms completed by the physicians" which included "only conclusions regarding the functional limitations without any rationale for those conclusions." While Defendant is correct that courts have remarked that check-off forms, like the ones used by Plaintiff's treating physicians in this case, can be of limited probative value, Defendant cites no case showing that the fact that a physician used a check-off form constituted good cause, by itself, for rejecting that treating physician's opinion. Thus, while the ALJ did not err by considering the probative value of the opinions on the basis that the opinions were contained in check-off forms, this fact alone does not constitute good cause for rejecting the opinions.

As treating physicians, Drs. Malhotra, Ulseth, and Co's opinions were entitled to substantial weight unless the ALJ provided good cause for rejecting the opinions. Here, the Court

finds that the ALJ failed to do so. Upon remand, the ALJ shall re-evaluate their opinions and explain the weight given to each of their opinions.

As the ALJ's weighing of the treating physicians' opinions is closely related to the analysis of Plaintiff's credibility, the Court defers from addressing Plaintiff's second raised issue at this time.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 15, 2019.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties